IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| S.J. Sr., on her own behalf and as next friend for S.J. Jr., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09 C 444 Judge Virginia M. Kendall |
| PERSPECTIVES CHARTER SCHOOL d/b/a, PERSPECTIVES - CALUMET MIDDLE SCHOOL, TAMARA DAVIS, ELENA FITCH, MS. BOWEN a/k/a HILL, CITY OF CHICAGO, UNKNOWN CHICAGO POLICE OFFICER JANE DOE, and the CHICAGO BOARD OF EDUCATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff S.J. Sr., on her own behalf and next friend for S.J. Jr. (collectively "S.J."), filed

a twelve count Amended Complaint against Defendants Perspectives Charter School d/b/a

Perspectives-Calumet Middle School ("Perspectives"), Tamara Davis ("Davis"), Elena Fitch

("Fitch"), Ms. Bowen a/k/a Hill ("Bowen"), the City of Chicago ("the City"), unknown Chicago

police officer Jane Doe ("Doe"), and the Chicago Board of Education ("the Board").  Counts I

through V of the Amended Complaint allege violations of 42 U.S.C. § 1983, specifically: (I) Fourth,

Fifth and Fourteenth Amendment claims against Davis, Fitch, Bowen and Doe; (II) a Due Process

"shocks the conscience" claim against Davis, Fitch, Bowen and Doe; (III) a Due Process special

relationship or state created danger claim against all Defendants; (IV) a failure to intervene claim

against Davis and Fitch; and (V) a *Monell* failure to train claim against Perspectives, the Board and

the City. A second Count V[1] and Counts VI through XII allege violations of state law, specifically: (V) state law assault and battery against Bowen and Doe; (VI) wilful and wonton retention and supervision claim against Perspectives; (VII) intentional infliction of emotional distress against Davis, Fitch, Bowen and Doe; (VIII) premises liability against the Board; (IX) false imprisonment against Davis, Fitch, Bowen and Doe; (X) violations of the Illinois Civil Rights Act against all Defendants; (XI) a *respondeat superior* claim against Perspectives; and (XII) an indemnification claim against Perspectives.

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Perspectives, Davis, Fitch and the Board move this Court to dismiss S.J's Amended Complaint in its entirety. Additionally, pursuant to Rule 12(b)(6), the City moves to dismiss Counts III, VI and X of S.J.'s Amended Complaint. For the reasons stated below, the Court dismisses with prejudice: Counts I, II, III, V, and IX with respect to Davis and Fitch; Count III with respect to Perspectives, the Board, and the City; Count IV in its entirety; Count V with respect to Perspectives and the Board; Count VI with respect to Perspectives and the City (the failure to supervise component only); Count VII with respect to Davis and Fitch; Count VIII with respect to the Board; Count X with respect to the City, Perspectives, Davis and Fitch; and Count XI against Perspectives with respect to the § 1983, false imprisonment and IIED claims.

### **BACKGROUND**

The following facts are taken from S.J.'s Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

---

[1] S.J.'s Amended Complaint mistakenly contains two separate counts identified as Count V: the *Monell* claim and a state law assault and battery claim. Because the assault and battery claim implicates only Bowen and Doe, who are not a party to either Motion to Dismiss, from this point forward the Court will use "Count V" to refer to the *Monell* claim only.

S.J. Jr. is a minor female who, at the time of the alleged incident, attended 8th grade at Perspectives-Calumet Middle School. Amend. Cmplt. ¶ 15. Perspectives is a not-for-profit corporation that operates Calumet Middle School, a public school, on property owned by the Board. Amend. Comp. ¶¶ 6-8. The Board is owned and operated by the City. Amend. Cmplt. ¶ 14. Perspectives employed Davis as Principal at Calumet Middle School, Fitch as the Dean of Students, and Bowen as a security guard. Amend. Cmplt. ¶¶ 9-11. The City employed Doe as a police officer. Amend. Cmplt. ¶ 13.

On or about December 15, 2008, Bowen and Doe conducted a search of S.J. Jr, making her remove her shirt, undershirt, pants and shoes. Amend. Cmplt. ¶ 18. While conducting this search, Doe patted S.J. Jr.'s sock-covered feet while Bowen shook the bra she was wearing. Amend. Cmplt. ¶¶ 19-20. This search was conducted at the direction of Davis and Fitch, and S.J. Jr.'s parents were not notified of the search. Cmplt. ¶¶ 21-22.

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *See id.* at 1950. A claim has facial plausibility

when the factual content in the pleadings allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949. When addressing a state law claim, a federal district court in Illinois must attempt to predict how the Illinois Supreme Court would decide that particular issue. *See Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997); *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1301 (7th Cir. 1995).

<u>**DISCUSSION**</u>

**I. Qualified Immunity of Davis and Fitch in Counts I-V**

Davis and Fitch move to dismiss S.J.'s § 1983 claims in Counts I-V pursuant to the doctrine of qualified immunity. "Governmental actors performing discretionary functions are entitled to qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In the school context specifically, "[a] school official searching a student is 'entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment.'" *Safford Unified School District v. Redding*, 129 S.Ct. 2633, 2643 (2009) (quoting *Pearson v. Callahan*, 129 S.Ct. 808, 822 (2009)). To overcome qualified immunity, a plaintiff must show that the alleged conduct gives rise to a constitutional violation, and that the right was clearly established at the time of the violation. *See Tun v. Whitticker*, 398 F.3d 899, 901-02 (7th Cir. 2005). To be clearly established, "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 902. District courts may exercise discretion in deciding which of these two prongs to address first. *See Pearson*, 129 S.Ct. at 818 ("The judges of the district courts and the courts of

4

appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first.").

Here, addressing the clearly established prong first, the Court finds that S.J. cannot show that the law regarding school strip searches was clearly established at the time of the alleged search, on December 15, 2008. In *New Jersey v. T.L.O.*, the Supreme Court held that "[a search] will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in the light of the age and sex of the student and the nature of the infraction." 469 U.S. 325, 342 (1985). The Supreme Court recently examined the lower courts' treatment of *T.L.O.* and found that: "the cases viewing school strip searches differently from the way we see them are numerous enough, with well reasoned majority and dissenting opinions, to counsel doubt that we were sufficiently clear in our prior statement of law," making it "impossible 'to establish clearly the contours of a Fourth Amendment right." *See Stafford*, 129 S.Ct. at 2644. Although it found the strip search at issue unreasonable in violation of the Fourth Amendment, the Court held that the school officials were entitled to qualified immunity because the constitutional standards surrounding strip searches were not clearly established. *Id.* at 2644 ("We think these differences of opinion from our own are substantial enough to require immunity for the school officials in this case.").

S.J. argues that even if the law regarding school strip searches was not clearly established on a national level at the time of the search of S.J. Jr., it was clearly established within the Seventh Circuit. In support of this position, S.J. incorrectly asserts that "as recently as 2006, the Seventh Circuit denied qualified immunity in a school strip search case." (R. 71 at 7.) However, the case S.J. relies on for this proposition is not a Seventh Circuit decision, but the district court decision in

*Carlson v. Bremen High School District 228, et al.*, 423 F. Supp. 2d 823, 828 (N.D. Ill. 2006). The only Seventh Circuit decision that S.J. cites is *Doe v. Renfrow*, 631 F.2d 91 (7th Cir. 1980), which was decided five years before *T.L.O.*, and which the Seventh Circuit later held not to provide clearly established precedent regarding the unconstitutionality of student strip searches. *See Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993) (finding that *Doe* did not clearly establish the unconstitutionality of strip searches of students, and "[b]ecause Cornfield has not succeeded in placing the actions taken by Spencer and Frye outside a 'clearly established' constitutional norm, they are entitled to qualified immunity") (citing *Doe*, 631 F.2d. at 92-93).

The strip search that S.J. alleges occurred in this case closely resembles that in *Redding*: it involved a search of a middle school female who was asked to remove her jacket and shirt, and whose bra was shaken out. *See Redding*, 129 S.Ct. at 2638. Because the search of S.J. Jr. occurred on December 15, 2008, prior to the *Redding* decision on June 25, 2009, S.J. cannot rely on *Redding* as being clearly established precedent. *See id.* at 2643. As such, Davis and Fitch are entitled to qualified immunity. *See Cornfield*, 991 F.2d at 1324. The Court dismisses Counts I-V (S.J.'s § 1983 claims) against Davis and Fitch. Because Counts I and II implicate only Davis, Fitch, Bowen and Doe, and Bowen and Doe have not moved to dismiss these Counts, the Court need not address the other arguments made in Perspectives', the Board's, Fitch's, and Davis's Motion to Dismiss these Counts. Similarly, because Count IV only implicates Davis and Fitch, Count IV is dismissed in its entirety.

## II. Sufficiency of 42 USC § 1983 Claims[2]

### A. Count III - Due Process, State Created Danger/Special Relationship

In Count III, S.J. alleges that all defendants had custody and control of S.J. Jr. such that they assumed full responsibility for protecting her and then breached that duty by affirmatively placing her in a position of danger. Consequently, S.J. argues that Defendants violated S.J. Jr.'s Fourteenth Amendment Due Process rights because Defendants created the danger and had a special relationship with her. The City and Perspectives, Davis, Fitch, and the Board all move to dismiss this Count. As explained above, the Court dismisses Count III on qualified immunity grounds with respect to Davis and Fitch. Thus, the only defendants remaining for the Court to consider are the City, Perspectives, and the Board.

Although the Due Process Clause places limits on the state's duty to act, it does not provide "a guarantee of certain minimum levels of safety and security." *See Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). The state has the duty to protect people from state actors under the Due Process Clause, but that duty generally does not extend to harm by private actors. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1989). There are two exceptions to this general rule: (a) where there is a special relationship, and (2) where the state creates the danger. *See Montfils*, 165 F.3d at 516; *see also King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007). In this case, S.J. has alleged both that a special relationship exists and that the state created the danger.

_____

[2]Perspectives, the Board, Davis and Fitch argue that Counts I-V generally fail to state a claim under *Monell v. Department of Social Services of City of New York*, because these counts do not each allege that an official policy or custom of a municipality or other governmental unit caused the alleged constitutional tort or that a person with final policymaking authority caused the tort. *See* 436 U.S. 658, 691 (1978). Because Counts I-V implicate different sets of defendants, however, the Court will take each remaining § 1983 claim in turn and consider whether and how *Monell* applies.

Although Count III does not specify which defendants are accused of which allegations, a municipality or local government unit cannot be liable under § 1983 unless the underlying constitutional deprivation is caused by a municipal custom or practice. *See Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978); *see also Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997) ("Municipalities and other local government units cannot be liable under § 1983 on a respondeat superior theory, but can be liable if action pursuant to an official policy or custom of the municipality or government unit causes a constitutional tort."). Failure to allege an official policy or practice of a municipality or local government unit, including a school board, results in a dismissal of that claim. *See Horwitz v. Bd. of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 619-20 (7th Cir. 2001) (noting that the school board "is an agency of municipal government" such that "*Monell* places the burden on Horwitz to demonstrate that an official policy or custom of the Board's caused her injury" or the claim will be dismissed). Here, Count III fails to allege the existence of a custom, policy or practice, and as such fails to state a claim against the City, the Board, and Perspectives.

Even if Count III stated a claim against these defendants, S.J.'s pleading fails to state a claim under the two *DeShaney* exceptions. *See Deshaney*, 489 U.S. at 197. With respect to the special relationship exception, the state (including school boards and school officials) does not have a "special relationship" with students simply by virtue of them being in school. *See J.O. v. Alton Community Unit School Dist. 11*, 909 F.2d 267, 272-73 (7th Cir. 1990). "Only where the state has exercised its power so as to render an individual unable to care for himself or herself may an affirmative duty to protect that individual arise." *Id.* (citing *DeShaney*, 489 U.S. at 199). Moreover, "[b]y mandating school attendance for children under the age of sixteen, the state of Illinois has not assumed responsibility for their entire personal lives; these children and their parents retain

substantial freedom to act." *Id.*; *see also Veronica School Dist. v. Acton*, 515 U.S. 646, 655 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.'") (citing *DeShaney*, 489 U.S. at 200). Although S.J.'s Amended Complaint does not specify what special relationship existed between S.J. Jr. and defendants, in its Response briefs S.J. argues that the special relationship arose merely because S.J. Jr. was in school at the time of the incident. (*See* R. 71 at p.5.) As pled, therefore, Count III fails to allege sufficient facts to establish the existence of a special relationship.

As to the state created danger exception, S.J. alleges that Defendants affirmatively placed S.J. Jr. in a position of danger that she would not have otherwise faced. Liability under the "state created danger" doctrine exists only "when the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Monfils*, 165 F.3d at 516. This doctrine consists of three distinct components: (1) the state by its affirmative acts must increase or create the danger faced by the plaintiff, (2) the failure to protect must be the proximate cause of the harm suffered by the plaintiff, and (3) the state's failure to protect must shock the conscience. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009) (internal citation omitted). To state a claim under this "state-created danger" theory, "a plaintiff must plead facts showing some affirmative act on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger." *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir.1997) (emphasis in original). S.J. fails to allege any affirmative steps taken by Perspectives, the City or the Board to increase or cause the danger faced by S.J. Jr. *See Werth v. Bd. of Directors of the Public Schools of the City of Milwaukee*, 472 F. Supp. 2d 1113, 1124 (E.D. Wis. 2007) ("Affirmative conduct, not mere inaction, is required."). Although a complaint need not set forth

detailed factual allegations, a plaintiff must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 557. Here, S.J. merely alleges that Defendants affirmatively acted, but does not describe any specific actions taken. Therefore, as alleged, Count III is dismissed with respect to all defendants except Bowen and Doe.

### B. Count V - Monell Policy, Practice and Custom Claim, Failure to Train

In Count V, S.J. alleges that "the actions of the individual Defendants were done pursuant to one or more interrelated de facto as well as explicit policies, practices and or customs of Perspectives, the City of Chicago, and the Chicago Board of Education," including "the failure to properly train employees in the legality of searches, and in particular in the legality of strip searching minor students." (R. 60 at ¶¶ 46, 48). Because Count V has already been dismissed with respect to Davis and Fitch, and Bowen, Doe, and the City have not moved to dismiss this Count, the only parties still implicated by this Count are Perspectives and the Board.

Local government units like Perspectives and the Board cannot be held liable for § 1983 violations under the doctrine of *respondeat superior* "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). A claim regarding a local government unit's unconstitutional policy, practice or custom can be based upon: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or practice' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). To state an actionable § 1983 claim based on policy,

practice, or custom, a plaintiff cannot merely assert the existence of a policy. *See Iqbal*, 129 S.Ct. at 1942 (holding that Iqbal failed to plead sufficient facts to plausibly show a discriminatory policy); *see also Horowitz*, 260 F.3d 602, 620 (7th Cir. 2001) (asserting that "on several occasions . . . the plaintiff or a representative informed the school board of the numerous violations of plaintiff's rights," and "the school board maintained a policy or ignoring such violations in reckless disregard" was insufficient to state a claim for policy or practice, such that "the claim against the Board was properly dismissed").

Here, S.J. alleges no specific "policies, practices and customs" of "Defendants" other than "failure to properly train employees." (R. 60 ¶ 48). S.J.'s pleading of this Count amounts to mere "legal conclusion" without "show[ing] that [S.J.] is entitled to relief." *See Iqbal*, 129 S.Ct. at 1950. In its statement of facts, moreover, S.J. fails to allege or describe any incidents other than the search of S.J., and claims that this shows failure to properly train employees. "A single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield*, 991 F.2d at 1326. Thus, although the single strip search alleged is "consistent with" S.J's theory of liability, S.J. has failed to plead facts sufficient to state a failure to train claim. *See Iqbal*, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).

Additionally, "an allegation of a 'failure to train' is available only" where the school district's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of students." *See Cornfield*, 991 F.2d 1327 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). S.J. alleges that "said failure to train was done with deliberate indifference,"

arguing that "[t]he need for training employees on the legality of student strip searches is so obvious, and the inadequacy is so extremely likely to result in a violation of constitutional rights, that a failure to train is evidence of deliberate indifference to the rights of students." *See* Response Br. at p 6-7. The Seventh Circuit rejected this argument in *Cornfield*, however, finding that "[g]iven the nebulous standards governing student searches, school districts and school district administrators cannot be held accountable on this [failure to train] ground because the particular constitutional duty at issue is not clear." 991 F.2d at 1327. In *Cornfield*, the plaintiff "[did] not state[] a claim that establishes deliberate indifference by District 230" merely by citing two reported incidents of strip searches, and S.J. only cites one incident. *See Cornfield*, 991 F.2d at 1327. Therefore, even taken in the light most favorable to the plaintiff, the allegations in Count V are insufficient, and the Motion to Dismiss is granted with respect to the Board and Perspectives.

## III. Sufficiency of State Law Claims

### A. Count VI – State Law Willful and Wanton Retention and Failure to Supervise Claim

Perspectives and the City also move to dismiss Count VI, a state law willful and wanton retention and failure to supervise claim. Count VI alleges that Perspectives and the City should have known that Davis, Fitch and Bowers created a danger for S.J. Jr., but failed to prevent them from abusing students. Both Perspectives and the City argue that the failure to supervise claim is precluded by Section 3-108 of the Illinois Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), and Perspectives further alleges that Section 2-201 of the Tort Immunity Act bars the retention claim.

"Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act. It is

only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003). Under the Tort Immunity Act, a local public entity or employee may only be held liable for failure to supervise if it is "guilty of willful and wanton conduct in its supervision proximately causing the injury." 745 ILCS § 10/3-108(a). The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm, or which, if not intentional, shows an utter indifference to or conscious disregard of the safety of others or their property." 475 ILCS § 10/1-210. To successfully maintain a willful and wanton failure to supervise claim against a public entity, a plaintiff must show that the defendant engaged in a "'course of action' that proximately caused the plaintiff's injuries," including having prior knowledge of similar incidents. *See Floyd v. Rockford Park Dist.*, 823 N.E.2d 1004, 1010 (2d Dist. 2005) (finding that plaintiff failed to state a claim for willful and wanton supervision where the complaint lacked allegations of defendants' prior knowledge of incidents where metal golf clubs were used to hit other children).

Here, S.J. alleges that the City and Perspectives "knew or should have known that Defendant Officer Doe was creating a danger for Plaintiff S.J. Jr." (R. 60 at ¶ 61), but fails to allege or describe any facts tending to show a course of action or any prior knowledge of similar incidents on the part of the City or Perspectives. S.J.'s pleading of the failure to supervise claim in Count VI therefore offers only "labels and conclusions" that the conduct was willful and wanton, without the "further factual enhancement" necessary to survive a motion to dismiss under Federal Rule of Civil Procedure 8. *See Twombly*, 550 U.S. at 555, 557. For these reasons, the Court dismisses S.J.'s failure to supervise claim with respect to the City and Perspectives.

Perspectives further alleges that Section 2-201 of the Tort Immunity Act bars S.J.'s retention

claim.  Section 2-201 provides:

> Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201.  The retention component of Count VI alleges that Perspectives had a special duty to keep S.J. Jr. safe, and that as a direct and proximate result of defendants' willful and wanton retention of Davis, Fitch and Bowen, S.J. Jr. suffered harm.  Perspectives argues that because the retention of employees is a policy decision, it is immune from liability under 745 ILCS 10/2-201.  However, Section 2-201 only shields "an employee," where the term "employee" includes "a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee."  745 ILCS 10/1-202.  Because Perspectives is a charter school, and not an "employee" under this definition, its actions are not shielded by Section 2-201.  Therefore, the Court denies Perspectives' Motion to Dismiss with respect to the willful and wanton retention claim in Count VI.

## B. Count VII – Intentional Infliction of Emotional Distress

Fitch and Davis move to dismiss Count VII for Intentional Infliction of Emotional Distress because it fails to state a claim under Rule 12(b)(6).  To state an actionable intentional infliction of emotional distress ("IIED") claim, a plaintiff must allege "(1) that the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress."  *Tuite v. Corbitt*, 830 N.E.2d 779, 789 (3d Dist. 2005) (reversed on other grounds).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1950.

S.J. alleges in Count VII of its Amended Complaint that "each of the individual Defendants engaged in extreme and outrageous conduct with respect to Plaintiff S.J. Jr.," that the individual Defendants undertook this conduct with intent or knowledge that it might inflict severe emotional distress, and that S.J. Jr. suffered severe emotional distress and anguish. These allegations comprise nothing more than a recital of the three elements of an IIED claim, which is insufficient to state a claim under the standard set forth in *Iqbal*, 129 S.Ct. at 1950. Indeed, S.J. does not allege specific facts to support its claim that Davis's and Fitch's conduct was extreme and outrageous, even though liability only attaches if their conduct as "so extreme and outrageous that it goes beyond all possible bounds of decency." *See Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 623 (7th Cir. 1989). Liability for IIED does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *See id.* (internal citations omitted). For example, a plaintiff's allegations that Lufthansa asked her "to come to the cockpit, question[ed] her about a bomb threat, and ha[d] her remain seated in the cockpit with a fastened seatbelt" while they asked her if she was a terrorist failed to state a claim for intentional infliction of emotional distress. *See id.* at 624. The court found that these allegations did not rise to the level of "egregious conduct" usually found in IIED claims, and that plaintiff "failed to allege specific facts to support [her] allegations." *See Schroeder*, 875 F.2d at 624. Because Count VII of S.J.'s Amended Complaint fails to allege any specific facts that would show the various elements of an IIED cause of action (especially the egregious conduct required), the Court dismisses this Count.[3]

---

[3] Davis and Fitch also allege that, in the alternative, the Tort Immunity Act shields Davis and Fitch from liability for the IIED claim. As explained above, it is Davis's and Fitch's burden to establish that immunity applies to bar S.J.'s claim. *See Van Meter*, 799 N.E.2d at 280. Davis and Fitch provide only a cursory overview of the law to support their conclusion that they are immune under 745 ILCS §§ 2-201, 2-202, 2-204, and 3-108. Because they have failed to properly develop their arguments and explain how these immunities apply to Davis and Fitch given the facts pled by S.J., the Court finds that they have failed to meet their burden under *Van Meter*, 799 N.E.2d at 280.

## C. Count VIII – Premise Liability

The Board moves to dismiss Count VIII of S.J.'s Amended Complaint, which asserts premises liability as a result of the Board's willful and reckless failure to "maintain its property at 8131 South May Street in Chicago in a reasonably safe condition by allowing the individual defendants access to private rooms in which they strip[ped] and searched the Plaintiff." (R. 60 at ¶ 80.) The Board alleges that S.J. fails to state a premises liability claim both because S.J. does not sufficiently describe a causation relationship between S.J. Jr.'s injury to and the condition of the property, and because S.J. fails to plead the Board's actual or constructive knowledge of the type of harm that existed. In order to state a claim for premises liability, the loss inflicted upon the premises "must be a direct result of the condition of the premises and must have a causal relation or other connection with the property itself." *Lawson v. City of Chicago*, 662 N.E.2d 1377, 1386 (1st Dist. 1996). In *Lawson*, a mother alleged that her son's death on school premises was caused in part by the school board's failure to maintain its property by having metal detectors that would have revealed that one of its students had a gun. *See Lawson*, 662 N.E.2d at 1387.

Like in *Lawson*, S.J.'s vague assertions that her injury can be attributed to the existence of private rooms in the premises (rooms that likely exist at almost every school), does not suffice to show that "the Board created or facilitated the condition that caused the loss." *Id.* at 1388. Indeed, by alleging that S.J. Jr. sustained her injury as a direct and proximate result of the search (R. 60 at paragraphs 17-22), S.J. has effectively pled herself out of court. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (a complaint "must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself

out of court.") (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).  For that reason, the Court grants the Board's motion to dismiss Count VIII.[4]

## D. Count IX – False Imprisonment

Davis and Fitch move to dismiss Count IX of S.J.'s Amended Complaint for false imprisonment.  Count IX alleges that Davis and Fitch "willfully and wantonly physically restrained the Plaintiff in that they ordered and/or acquiesced in her seizure and strip search."  (R. 60 at ¶ 86.)  "To establish either a claim of false arrest or false imprisonment, a plaintiff must show that she 'was restrained or arrested by the defendant[s], and that the defendant[s] acted without having reasonable grounds to believe that an offense was committed by the plaintiff.'"  *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 317 (1st Dist. 2006) (quoting *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (1st Dist. 2006)).  Students cannot show that they were unlawfully restrained in school because they do not possess freedom of movement within a school.  *See, e.g.*, *Acton*, 515 U.S. at 654-55 (explaining that "unemancipated minors . . . are subject, even as to their physical freedom, to the control of their parents or guardians," such that when those children are in school, "the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them"); *Rogers ex. rel. Rogers v. Cook*, No. 08-2270, 2008 WL 5387642, at *3 (N.D. Ill. Dec. 23, 2008, J. Andersen) (dismissing a false imprisonment claim by a student as a matter of law because "Rogers 'could never show that [he] was unlawfully restrained because [he] never possessed freedom of movement within the

---

[4] As one further grounds for dismissal, under the Tort Immunity Act, a local public entity has a duty to maintain its property in reasonably safe condition, but it "shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that it is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition."  745 ILCS 10/3-102(a).  Also like in *Lawson*, S.J. makes only "nonspecific and conclusory" allegations that the Board was aware that its premises were not maintained in a reasonably safe condition, without any "particularized facts of prior incidents that created a risk of harm to establish knowledge by the Board of that harm."  *Lawson*, 662 N.E.2d at 1387-88.  Although there is a possibility that S.J. could remedy this failure to plead particularized facts by re-filing, the Court has already dismissed this Count with prejudice.

school") (quoting *Wilson v. Cahokia Sch. Dist. 3187*, No. 05-297, 2005 WL 2407577, at *2 (S.D. Ill. Sept. 29, 2005, J. Murphy)); *Bell v. Marseilles Elementary Sch.*, No. 00-2553, 2001 WL 818897, at * 5, n. 6 (N.D. Ill. Mar. 7, 2001, J. Conlon) (granting summary judgment in favor of school officials for false imprisonment claims and noting that "Plaintiffs cannot establish as a matter of law that they were unlawfully restrained because they never possessed freedom of movement within the school").

Again, a complaint "must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Tamayo*, 526 F.3d at 1084 (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Because students may not bring false imprisonment claims based on their detention for disciplinary matters within schools, S.J.'s false imprisonment claim fails as a matter of law. Like in *Rogers*, where the court noted that "Rogers may have a cause of action" for excessive force and false arrest "because he alleges that he was not merely detained . . . but was also placed in handcuffs," S.J.'s § 1983 claims address the subsequent strip search that accompanied her detention. *See Rogers*, 2008 WL 5387642 at *3. Because S.J. cannot state a claim for false imprisonment on the basis of her detention alone, the Court grants Davis's and Fitch's motion to dismiss Count IX.

### E. Count X – Illinois Constitution

The City, Perspectives, Davis and Fitch move to dismiss Count X of S.J.'s Amended Complaint because S.J. has a sufficient remedy for the charged conduct under federal law and Illinois common law. Count X alleges that Davis, Fitch, Bowen and Doe violated S.J. Jr.'s right to be secure against unreasonable searches, seizures, and invasion of privacy under Article I, Section 6 of the Illinois Constitution, and specifically claims that S.J. is entitled to attorney's fees for the

violation of rights arising out of the Illinois Constitution under 740 ILCS 23/5(c). Counts XI and XII, for respondeat superior and indemnification, purport to make the City and Perspectives liable for this violation of the Illinois Constitution.

Notably, S.J. fails to offer any response to defendants' arguments regarding this Count in its Response brief. (*See* R. 71; R.72). When addressing a state law claim, this Court must try to predict how the Illinois Supreme Court would rule on that issue. *See Allen*, 128 F.3d at 466. This Court, then, must determine whether or not the Illinois Supreme Court would find an independent cause of action for unreasonable search and seizure and invasion of privacy under the Illinois Constitution. "Although there is a dearth of Illinois state law on this issue, several federal courts have addressed similar situations." *Tidwell v. Teneyuque,* No. 00-1646, 2001 WL 321052, *3 (N.D. Ill. Mar. 30, 2001, J. Kocoras). These courts have found that where adequate remedies exist under state common law or federal law for certain causes of action, a plaintiff may not maintain an independent cause of action under the Illinois Constitution. *See, e.g.*, *Ingram v. Jones*, No. 95-2631, 1995 WL 745849, *4 (N.D. Ill. Nov. 29, 1995, J. Nordberg) ("Because Illinois common law provides Plaintiff the remedy of actions for false arrest and excessive force, this Court finds that an Illinois court considering the issue would not recognize a right to bring a separate cause of action under Article I, § 6 of the Illinois Constitution."); *Richard v. Lukensmeyer*, No. 98-6409, 1999 WL 261835, *3-4 (N.D. Ill. April 12, 1999, J. Marovich) (finding that the Illinois Constitution could not provide an independent cause of action where the plaintiff had an adequate remedy under § 1983); *Tidwell*, 2001 WL 321052 at *3 (finding no cause of action under the Illinois Constitution for plaintiff's claims because adequate remedies existed under state common law and federal law, specifically through § 1983); *Woods v. Clay*, 2005 WL 43239, *24 (N.D. Ill. Jan. 10, 2005, J. Lefkow) ("the

plaintiffs may not maintain a separate, independent cause of action under the Illinois Constitution for battery, false arrest, excessive force, or malicious prosecution"). Here, even though S.J. has failed to sufficiently plead certain of its causes of action under § 1983 and state common law, it has a remedy under those laws for the violations of the Illinois Constitution it alleges here–namely, unreasonable search and seizure and invasion of privacy. For that reason, the Court dismisses Count X.

## F. Count XI – Respondeat Superior

Perspectives moves to dismiss Count XI, a *respondeat superior* claim against Perspectives and the City. In Count XI, S.J. alleges that in committing all of the acts in the other Counts, the individual defendants were acting within the scope of their employment, such that Perspectives and the City must indemnify their acts and are liable as a principal for all of their torts. Because Doe and Bowen have not taken part in either of the motions to dismiss now before the Court, S.J.'s § 1983 claims against them remain. However, as explained in more detail above, Perspectives may not be held liable under § 1983 based on a respondeat superior theory. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). For that reason, the Court dismisses Count XI to the extent that it is based on the purported conduct underlying S.J.'s § 1983 claims. With respect to the other claims stated against individual defendants, the Court dismisses S.J.'s *respondeat superior* claim for indemnification to the extent that it is based on the conduct underlying the IIED and false imprisonment claims, as those claims have been dismissed.

### G. Punitive Damages

In Count XI for *respondeat superior* and Count XII for state law indemnification, S.J. states that if the individual defendants are found liable, they are entitled to indemnification by Perspectives and the City for, among other things, any punitive damages awarded. Perspectives, Davis, Fitch and the Board move to strike S.J.'s "claim" against them for punitive damages pursuant to § 2-102 of the Tort Immunities Act. *See* 745 ILCS 10/2-102 ("Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party.") However, S.J.'s claims in Counts XI and XII only implicate Perspectives "if" individual defendants "are found liable for the allegations in this Complaint" for "any compensatory damages, punitive damages, and attorney's fees." (R. 60 at ¶¶ 97, 102.) Because the Court has not yet found any individual defendant liable for punitive damages, and indeed, none of the Counts in S.J.'s Complaint specifically demand punitive damages, there are no punitive damages claims for the Court to dismiss. For that reason, the Court finds Perspectives' argument with respect to punitive damages premature.[5]

### CONCLUSION AND ORDER

For the reasons stated, the Court dismisses with prejudice: Counts I, II, III, V, and IX with respect to Davis and Fitch; Count III with respect to Perspectives, the Board, and the City; Count IV in its entirety; Count V with respect to Perspectives and the Board; Count VI with respect to Perspectives and the City (the failure to supervise component only); Count VII with respect to Davis

---

[5] The Court notes, however, that by its clear terms, § 2-102 bars S.J. from recovering punitive damages from Perspectives and the Board, as "local public entit[ies]" who are not liable to pay punitive damages "in any action," whether brought directly or indirectly. 745 ILCS 10/2-102; *see also Hicks v. Bd. of Ed. For Sch. Dist. 189*, 397 N.E.2d 16, 19 (5th Dist. 1979) ("[S]ection 2-102 of the Local Governmental and Governmental Employees Tort Immunity Act . . . specifically immunizes local public entities, here the school district, from liability for the payment of punitive or exemplary damages.").

and Fitch; Count VIII with respect to the Board; Count X with respect to the City, Perspectives, Davis and Fitch; and Count XI against Perspectives with respect to the § 1983, false imprisonment and IIED claims.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Dated: February 9, 2010